**OLSZEWSKI v. UNITED FRUIT CO.**
et al.
No. 146.

District Court, E. D. Pennsylvania.
Aug. 15, 1940.

Freedman & Goldstein, Abraham E. Freedman, and Milton M. Borowsky, all of Philadelphia, Pa., for plaintiff.

Shields, Clark, Brown & McCown and Samuel B. Fortenbaugh, Jr., all of Philadelphia, Pa., for defendant.

BARD, District Judge.

This is a motion for judgment for the defendant on the record under Rule 50(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, in accordance with motion for directed verdict, the jury having disagreed and been discharged.

The action was one under Section 33 of the Merchant Marine Act of 1920, commonly known as the Jones Act, 41 Stat. 1007, 46 U.S.C.A. § 688, and was brought by Anthony Olszewski against the United

Fruit Company and the United Fruit Steamship Corporation on account of personal injuries allegedly sustained by Olszewski while cleaning boilers aboard the steamship "San Bruno", which, according to the answer filed by the United Fruit Company, admittedly was owned and operated by it. Upon trial, at the conclusion of the plaintiff's evidence and again at the end of the trial, counsel for the defendant moved for a directed verdict. However, the case was allowed to go to the jury which failed to agree on a verdict and was discharged.

At the trial, the plaintiff testified that he and several others were employed by the National Boiler Cleaning Company to go aboard the "San Bruno", and to clean out the boilers in the fire room of the said vessel. He admitted that he was a seasoned seaman and very much experienced in boiler cleaning work. The contractor, the National Boiler Cleaning Company, supplied its employees with gloves, brushes, goggles and other necessary equipment. However, the iron rods and wooden planks, used in constructing a scaffold to reach the retarders in the boilers, were supplied by the shipowner. Apparently, this was due to the fact that the fire rooms of various ships differ in size and the iron rods necessary for the scaffold must fit precisely between the safety catches on the various boilers. Upon arriving on the ship, plaintiff and his fellow employees were informed that the necessary planks could be found in a shaft alley. Plaintiff states that there were two boards therein, one of which he helped to pull out. He testified: "And the second board the other two men brought out. Well, they brought in a board that was a newish looking board, a newish looking board, about eight or ten feet long and about ten inches wide and about two inches thick, *and in looking over it had a twist to it, a warp, it was kind of crooked.*" (Italics supplied)

Plaintiff said that he helped erect the scaffold in connection with which these boards were used. There were two boilers to be cleaned. While taking the retarders out of the first boiler, for over an hour, plaintiff admitted that the allegedly warped board did not wobble. Then the planks were shifted so as to be convenient to the other boiler. Plaintiff declared that he had removed nearly all of the retarders from the second boiler, standing on both planks with one foot on each, when, in order to gain access to those remaining, he placed both feet on the warped board and assumed a squat position. He testified that, thereupon, the board wobbled causing him to lose balance and to fall backwards against the hot retarders and thence to the floorplates, as a result of which he sustained severe burns and wounds.

At a later stage of the trial, plaintiff denied that prior to the accident he knew the board would wobble. He stated also that the boilers still were very hot and that working conditions were difficult. Albert W. Walaconis, who testified on behalf of the defendant, stated that he had worked with the plaintiff and that he did not see him fall off any plank; further, that he had washed plaintiff's back after the job was finished and noticed nothing wrong. However, there was also testimony by Dr. David Gelfand who stated that he had examined plaintiff on the day of the alleged injury and had found him to be suffering from second degree burns of the left arm and shoulders and contusions and lacerations of the back. To the same effect was the abstract from the clinical record of the United States Public Health Service.

In ruling on the instant motion, the testimony must be considered in the light most advantageous to the plaintiff in order to determine whether or not there was sufficient evidence from which a jury might infer negligence on the part of the defendant. Baltimore & O. R. Co. v. Muldoon, 3 Cir., 102 F.2d 151.

While plaintiff was not the servant of the defendant and was an employee of an independent contractor, nevertheless, if the defendant undertook to supply bars and planks for the construction of the scaffolds, it was incumbent upon it to furnish equipment reasonably safe for that purpose or to give notice of any defects therein, ascertainable by a reasonable inspection, which might constitute a source of danger and which was unlikely to be discovered or its danger realized by those to whom the equipment was supplied. Cf. The Henry S. Grove, D.C., 22 F.2d 444; Luckenbach S. S. Co. v. Buzynski, 5 Cir., 19 F.2d 871; Glover v. Compagnie Generale Transatlantique, 5 Cir., 103 F.2d 557. However, the defendant owed no duty to notify plaintiff of a patent defect whose danger, if any, readily was ascertainable from a mere casual looking over of the plank unless the circumstances were such that it was probable that even such a cas-

ual inspection would not be made. See Restatement of Torts, § 388, comment i. Since contributory negligence is not a defense nor bar to recovery under the Jones Act, but is ground only for apportionment of the damage, Beadle v. Spencer, 298 U.S. 124, 131, 56 S.Ct. 712, 80 L.Ed. 1082, on this motion for judgment on the record we need concern ourselves only with the application of the foregoing rules regarding the scope of defendant's duty of care.

 After a careful consideration of all the testimony, I have reached the conclusion that there was insufficient evidence from which a jury could find a breach of duty on the part of the defendant. That the defect was patent and easily discernible from a casual inspection is established by plaintiff's own testimony in that he noticed the warped and crooked condition of the board when it first was removed from the shaft alley. Any possibility of danger should have been obvious to the plaintiff who, admittedly, was a man of long experience in this type of work. Cf. Vasey v. McLean, 310 Pa. 282, 165 A. 241. Under these circumstances, therefore, it would seem that the defendant owed no duty of expressly notifying the plaintiff of the defective condition of the plank. So clearly does this appear from the evidence that, in his supplemental brief, the plaintiff seems to concede that the appliance was obviously defective, but argues that this fact is relevant merely in connection with mitigating the damage on account of plaintiff's contributory negligence.

I am unable to agree with this view of the law. Plaintiff admitted that he saw the defect at the very outset. If he was also aware of the risk but nevertheless used the allegedly defective plank, then recovery would be barred because of his voluntary assumption of a known risk, a defense still available under the Jones Act as respects actions by longshoremen and other workers who serve on the craft merely during the day and live ashore. Scheffler v. Moran Towing & Transportation Co., 2 Cir., 68 F.2d 11; Skolar v. Lehigh Valley R. Co., 2 Cir., 60 F.2d 893. If he ought to have been aware of any danger arising from this obvious and patent defect, then recovery is barred because, as previously stated, the defendant then would owe him no duty of expressly informing him of that fact, and this entirely aside from the question of contributory negligence. The latter appear to be the facts so well established by the evidence that a jury would be unwarranted in finding to the contrary. It must be reiterated that plaintiff was an experienced workman who not only had actual notice of a patent defect, but who also should have been the first to recognize the existing source of danger, if any. Further, he and his fellow worker constructed the scaffold. Under these circumstances, to hold the defendant liable in damages would be to impose an unreasonable burden unwarranted by the requirements of the law.

In accordance with Rule 50(b) of the Federal Rules of Civil Procedure, entry of judgment for the defendant hereby is directed.