# JONES v. HARTMAN BEVERAGE CO., Inc.—
## 203 S. W. (2d) 166.

Eastern Section. July 31, 1946.

**Petition for Certiorari denied by Supreme Court, January 17, 1947.**

W. Hoyle Campbell and W. O. Lowe, both of Knoxville, for plaintiff in error.

J. C. Thomason, of Knoxville, for defendant in error.

McAMIS, J. Barbara Ann Jones, 11 years of age, through her father as next friend, sued the defendant Hartman Beverage Company for the loss of a portion of the little finger of her left hand, predicating her action upon the theory that the defendant, in the sale of its product known as Pepsi Cola, had control of the automatic refrigerator drink box which caused the injury. The declaration charges that the machine was not provided with proper safeguards to prevent such an injury.

The defendant filed a plea of not guilty and at the conclusion of all the proof the court sustained its motion for peremptory instructions and dismissed the suit.

The defendant is a bottler and distributor of Pepsi Cola. It makes no sales at retail. Its product was distributed to retailers who either sold it over the counter or by means of an automatic dispensing machine. If the Pepsi Cola was to be sold over the counter defendant made a charge of 80c per case. At the request of the retailer it would furnish an automatic dispensing machine at an increase of 10c per case. These machines were obtained by defendant from the Universal Cooler Corporation which seems to have been an established manufacturer of such machines, extensively used throughout the United States. Defendant had installed 25 or 30 of these machines in the Knoxville area and they had been in use for two or three years before plaintiff was injured without any notice to defendant that any accident had occurred in connection with their use.

In January, 1943, defendant placed one of its machines at the State School for the Deaf where it remained and was in use until the accident occurred in April, 1945. The lease agreement was with the Athletic Association of the School and provided for a rental of 10¢ per case. The keys to the machine were left at the School office, one key being to the box where the drinks were kept and the other to the money box. The defendant did not retain a key and had nothing further to do with the maintenance or operation of the machine except to repair it on call from the School when it would fail to operate.

Between the date of the installation of the machine and the date of the accident the defendant delivered its product by placing the bottles in a storeroom from which they were removed by an employee of the School and placed in the dispensing machine. Money was also removed by an employee of the School and not by defendant.

Before the injury to plaintiff two of the pupils, on different occasions, had had their fingers pinched by the machine. This was known to the Superintendent of the School or by one of the teachers but defendant had never been advised of either occurrence. Testimony in its behalf shows that hundreds or thousands of the machines were in operation and that it had never heard of any accident.

The learned trial judge filed a memorandum opinion setting forth his reasons for sustaining defendant's motion for peremptory instructions and concluded that the machine was not an inherently dangerous machine but at most only imminently dangerous and that defendant would not be liable except upon a showing of actual knowledge of the dangerous nature of the machine, a fact not established by the proof.

The machine in question operated, as we understand, as follows: About 24 bottles of Pensi Cola were placed in the machine on a chain. A coin dropped in the slot automatically tripped an electric switch which started the chain and carried a bottle of Pepsi Cola to a point underneath an aperature 3 or 4 inches in diameter. When the bottle reached this point a light came on and the machine stopped. As the bottle moved toward the aperture it was guided by what is described as a four leaf clover disk revolving on a rod within a cylinder of steel. A lid over the opening was provided, the instructions reading: "Insert Coin Lift Lid Take Out Bottle." There is proof that when plaintiff was injured the lid was missing and the light was not working.

Barbara Ann Jones was not a pupil at the School. On the occasion of her injury she came to the School to see her father who was one of the teachers. She obtained coins from her father and went with her companion, another girl of about the same age, to the dispenser. She first inserted a nickel and removed a Pensi Cola bottle which she gave to her companion. She then put in another nickel and apparently inserted her hand before the chain carrier came to rest with the second bottle. Her finger was caught and amputated near the knuckle.

Prof. Ward, a witness for plaintiff, testified:

"Q. The point I make is in order to get your hand down where it could possibly be caught would have to be at a time when there wasn't a bottle in the well? A. Yes sir, that is true.

"Q. If there was a bottle in the well— A. It would not be operating.

"Q. And your finger could not be caught? A. That is right."

From this it appears that the immediate cause of plaintiff's injury was the fact that she inserted her hand while the chain and the clover leaf disk were in operation and before the bottle had reached a position from which it could be removed from the machine. If the light had been on as intended she could have seen that the bottle was not in position to be removed, and if the lid had been closed as intended and she had followed the directions the machine might have come to rest before she had time to insert her hand. As we understand, the insistence is that the machine was defective because of the absence of a light and a guard.

█ We think the relationship between defendant and the Athletic Association was that of bailor and bailee and that the bailment was one for the mutual benefit of the parties. Defendant was anxious to dispense its product and thereby earn a profit while the Athletic Association was also a beneficiary in that the profits from the operation of the machine belonged to it.

█ In Vaughn v. Millington Motor Co., 160 Tenn. 197, 22 S. W. (2d) 226, 227, it was said:

"While the contractual obligation of the bailor is limited to the bailee and those in privity with him, the law imposes an attendant obligation upon the bailor not to knowingly put forth an instrumentality for general use that is calculated to injure third persons. Whether liability for an omission of duty in such situations would extend to persons not contemplated by the contract of bailment depends upon the existence of privity, only in the sense of a relation creating an obligation. Garland v. Boston R. Co., 46 L. R. A. (N. S.), 338, Note, as between the injured person and the bailor whose omission of duty caused the injury. Roddy v. Missouri Pacific R. Co., 104

Mo. 234, 15 S. W. 1112, 12 L. R. A. 746, 24 Am. St. Rep. 333. . . .

"As stated, this duty does not rest upon the contract of bailment, but arises from the obligation which the law imposes upon every man to refrain from acts of omission or commission which he may reasonably expect would result in injury to third persons."

■ A clear statement of what we consider an acceptable rule appears in connection with an annotation at 131 A. L. R , 853 where it is said:

"Other decisions involving miscellaneous subjects of bailment, however, in general support the rule that a bailor for hire may be held liable for personal injuries to or death of the bailee or a third person resulting from a defect in the bailed article if such bailor failed to exercise a reasonable degree of care to ascertain if the bailed article was in fit condition for its known intended use, and failed to remedy or disclose the defects if they were not known or obvious to the person injured." See numerous supporting cases immediately following the above.

■ The general rules as to proximate cause apply and generally if a bailor is under any circumstances answerable to third persons injured by a dangerous article or substance let by him to another, it can only be when there is no intervening human agency which might have prevented the injury. 6 Am. Jur., 404, Bailments, Section 317.

Defendant strenuously insists that the continued use of the machine by the bailee without a light and guard and after two students had suffered minor accidents in connection with its use, constitutes an intervening human act which was the proximate cause of plaintiff's injuries. Ford Motor Co. et al. v. Wagoner, 183 Tenn. —, 192 S. W. (2d) 840, 842, 164 A. L. R. 364, is cited and relied upon.

█ As defendant insists, there is no proof that the machine, at the date of the bailment, was not properly provided with a light and a lid over the opening from which bottles were removed; nor, if such was the case, is there any proof that defendant knew at the time plaintiff was injured that the lid and light were missing from the machine. But, however this may be, if the lid and light were missing when the machine was delivered to the bailee, this was a patent condition and not a latent or lurking danger. Defendant was not the manufacturer of the machine but purchased it from the manufacturer and passed it on to the bailee in the same condition as when it came from the manufacturer. The condition of which complaint is here made was as obvious to the bailee as to the bailor. In fact the bailee had superior knowledge of the danger because two of the students had been injured on the machine. This was known to the bailee but not to the bailor.

In Ford Motor Co. v. Wagoner, supra, appears an exhaustive review of the authorities dealing generally with the liability of the bailor or manufacturer and seller for injuries to third persons. That case involved the liability of a manufacturer of an automobile for a defect which it called to the attention of the purchaser, providing at the same time a means for avoiding the danger. The purchaser ignored the attempt of the manufacturer to remove the danger and sold the automobile to a third party who was operating it when the injury for which the suit was brought occurred. It was held that the negligence of the original purchaser in failing, after notice, to remedy the defect and remove the danger broke the causal connection between the original negligence of the manufacturer and the ultimate injury sustained.

■ The opinion quotes from Beven on Negligence as follows:

" 'A person who knowing the perilous character of a compound (equally applicable, clearly, to other instrumentalities fraught with danger) which he has bought, yet hands on the compound to a third person, destroys, by his negligent act, the causal connection between the first person concerned and the ultimate injury sustained.'

. . .

" 'The principle that to fix liability for injuries brought about through a complicated state of facts, the last conscious agency must be sought; and the consideration that if, between the agency setting at work the mischief and the actual mischief done, there intervenes a conscious agency, which might or should have averted mischief, the original wrongdoer ceases to be liable, afford the clues for the unravelling the cases.' "

■ We think these principles have application here. The bailor, so far as appears, delivered to the bailee a machine without the defects which existed at the date of the injury. It had no notice that the machine had become defective or was likely to cause injury. There was no duty to remove the defects and repair the machine except after notice which, according to undisputed evidence, was not given before plaintiff was injured. We can find from the proof no breach of duty by the defendant.

It is earnestly insisted that, notwithstanding the form of the agreement, in actuality the persons in charge of the machine were agents of the defendant; that the doctrines of respondeat superior and res ipsa loquitur apply.

■ As already shown, defendant had no control over the machine after it passed from its possession. It was loaded by someone at the School from bottles placed in

the storage room at the School. Money derived from the sale of Pepsi Cola was removed from the machine by someone at the School, the funds going into the treasury of the Athletic Association. The enterprise at the School was carried on independently of any control or right of control by defendant. As held in cases too numerous and too familiar to cite, the doctrine of res ipsa loquitur cannot be applied against a defendant who does not have control of the instrumentality.

We find no error in the action of the court in sustaining defendant's motion for peremptory instructions and it results that all assignments are overruled and the judgment affirmed with costs.

Hale and Burnett, JJ., concur.