CLIFFORD BLANKENSHIP, Respondent, v. THE ST. JOSEPH FUEL OIL & MANUFACTURING COMPANY, a Corporation, Appellant, No. 41651 —232 S. W. (2d) 954.

Division Two, September 11, 1950.

Motion for Rehearing or to Transfer to Banc Overruled, October 9, 1950.

1172.

*Culver, Phillip, Kaufmann & Smith* and *Francis Smith* for appellant.

*Arvid Owsley, Robert S. McKenzie* and *Stubbs, McKenzie & Williams* and *Mitchell & Hulse* for respondent.

BOHLING, C.—Clifford Blankenship sued The St. Joseph Fuel Oil & Manufacturing Company, a corporation, for $50,000

damages for personal injuries arising out of the rental and use by his employer, Land Construction Company, a corporation, of defendant's street sweeping machine. The jury returned a unanimous verdict in favor of the defendant. Thereafter, plaintiff's motion for new trial was sustained on the ground defendant's instruction "I" was erroneous. Defendant appeals, contending plaintiff failed to make a submissible case and said instruction was not erroneous.

Only two witnesses testified—plaintiff and his witness Fred Dawkins, manager of the Land Construction Company (sometimes hereinafter designated Construction Company), who gave the only testimony concerning the bailment of the sweeper. We state the evidence favorable to plaintiff.

Plaintiff was injured on August 18, 1947, while working for the Construction Company in rebuilding streets in the city of Fairfax, Missouri. The Construction Company had the contract and The St. Joseph Fuel Oil & Manufacturing Company (sometimes hereinafter designated Oil Company) was a subcontractor. The Construction Company regraded or swept and smoothed the street so the oil would adhere; then defendant furnished, applied, and cured the oil; and then the Construction Company applied the gravel and rolled and broomed or swept it back and forth on the street.

Plaintiff started to work for the Construction Company in May or June, 1947. His principal work was scattering gravel behind dump trucks, a gravel spreader. He was 27 years of age. He had received only an eighth grade education.

The Construction Company used defendant's mechanical "sweeper" on the work, paying a rental therefor. The sweeper was axle driven. It had one wheel in front. The broom was between the front and rear wheels and was driven by means of a chain and sprocket arrangement from the axle between the rear wheels. Back of the broom was an assembly for its operation. Between the rear frame of the sweeper and said assembly, and across the right-half of the space between the rear wheels, was a steel grating platform on which the operator stood. Plaintiff testified the grating was two feet wide and about four feet long. There was like space, open, between the grating and the left rear wheel; and the chain and sprockets, which turned the broom by means of power furnished by the rear wheels, were below the level of the grating in this open space. The chain and sprockets were exposed—not guarded. The operator raised or lowered the broom by means of a handle extending about four or five feet towards the rear from the assembly. The handle reached about to the operator's hip with the broom down and about to the calf of his leg with the broom raised. The operator steadied himself by holding onto the handle. There was no stationary handhold.

On the day of plaintiff's injury, the Oil Company had finished its work. The only work going on was the Construction Company's

work and the equipment on the job was the tractor and the sweeper. Only three men remained on the Fairfax project; to wit: J. C. Hudson, the superintendent, and Harold Little and plaintiff, each an employee of the Construction Company. Hudson supervised the Oil Company's work for it; and also the Construction Company's work for it. Hudson instructed plaintiff to operate the sweeper and instructed Little to operate the tractor and pull the sweeper. They were to sweep the gravel from the curb to the center of one of the streets. Hudson then left. Plaintiff had operated the sweeper without any trouble for eight hours about a week prior to his injury.

Plaintiff testified that about 8:30 a. m. they had gasoline put in the tractor, and the sweeper greased; that the station operator wrote "St. Joseph Fuel Oil" on the ticket and Little signed it.

The men resumed work. Plaintiff testified that about 10:30 a. m., after they ▉ turned the sweeper around to proceed east, he let the broom down; that they had proceeded but a short distance when the sweeper lurched, or jarred, or hit something (he did not know what as he could not see because of the dust), and this caused him to be thrown off balance and to fall sideways through the open space (to his left) and catch his leg in the chain and sprocket. His leg was so badly injured it had to be amputated four or five inches below his knee.

There was evidence warranting findings that W. E. Grace Manufacturing Company of Dallas, Texas, sold Marion Land a road sweeper in 1940, and that all road sweepers manufactured and sold by that Company had a metal covering or casing over the chain and sprockets which turned the broom.

Plaintiff's witness Dawkins testified to the following effect: The Land Construction Company was incorporated in April, 1945, immediately after Dawkins joined the organization. He had been with the State Highway Department since 1929. Marion Land, the individual, was never connected with the corporation. It did a general road construction business. It owned much equipment and had had equipment on the Fairfax job. It did not own a sweeper. As was the custom and general practice it rented equipment from other contractors under verbal agreements as occasion required. It had rented this sweeper from defendant on all of its projects where a sweeper was needed since 1945, embracing approximately twelve jobs. The sweeper had at all times been in the same condition it was on the Fairfax project. The Construction Company moved the sweeper from one job to another, and knew as much, if not more, about its condition as defendant. When the Construction Company rented the sweeper it "took it as it was," "as is," there being no warranties or representations made by defendant. The agreement with defendant was that the Construction Company had possession and full control over the supervision, operation, and maintenance

of the sweeper and would return it in as good condition as received, less normal wear and tear. Defendant was under no obligation to do anything about the sweeper, it being the obligation of the Construction Company to take care of it, supply the oil and grease, and anything else needed.

J. C. Hudson's (the superintendent's) salary and expenses were advanced by the Oil Company. He kept a record of all advancements by defendant for supplies on equipment being used by the Construction Company, and the Construction Company would reimburse defendant therefor. The Construction Company's fiscal year ended in April and that Company let its bills accumulate and adjusted its accounts with the Oil Company on the Fairfax job in April, 1948, paying its share of Hudson's salary and expenses as well as other items due the Oil Company.

On August 18, 1947, the officers of the Construction Company were also the officers of the Oil Company; the president, vice-president, and secretary-treasurer, although the same individuals, did not hold the same office in each corporate organization. Each corporation had its offices at 1207 South 4th Street, St. Joseph, Missouri. This suit was filed January 21, 1948. At the time of trial, May, 1949, the officers of the two companies were no longer the same and the two companies were not located at the same address.

Plaintiff was not harmed by error, if any, in defendant's instruction if he did not make a submissible case against defendant.

Defendant did not owe plaintiff the duties a master owes a servant as such relationship did not exist between them. Plaintiff's evidence established, and there was no evidence contra, that the Construction Company held the contract to resurface the streets at Fairfax and defendant was a subcontractor furnishing and spreading the oil used on the streets. The project, while mutually beneficial, was not a joint undertaking with plaintiff a servant of the joint contractors. Plaintiff was a third party to the contract of bailment between defendant and the Construction Company and his right of recovery must be based on some ground other than a breach of that contract. Roddy v. Missouri Pac. Ry. Co., 104 Mo. 234, 245, 15 S. W. 1112, 1114, 12 L. R. A. 746, 24 Am. St. Rep. 333; Glenn v. Hill, 210 Mo. 291, 299, 109 S. W. 27, 29, 16 L. R. A. (N. S.) 699; Lahtinen v. Continental Bldg. Co., 339 Mo. 438, 97 S. W. 2d 102, 107 [4].

Generally, a bailee has the possession, control, and supervision of the thing bailed and is liable for injuries to a third party resulting from his negligent use of the chattel; but a bailor who negligently fails to furnish a chattel reasonably fit and proper for the use intended may be answerable in tort to a third person in instances wherein his own negligence proximately contributes to the damage; for instance, where he furnishes a chattel not reasonably fit for the .

purpose for which hired. A bailor's tort liability is more restricted than a bailee's. 8 C. J. S. 319, Bailments, §§ 40, 25; 6 Am. Jur. 413, Bailments, §§ 312-317; 2 Restatement, Torts, §§ 388-390; §§ 405-408, and 1948 Supplement.

The chattel here bailed, the sweeper, was not inherently dangerous. Consult Roddy v. Missouri Pac. Ry. Co., 104 Mo. 234, 246 (III), 15 S. W. 1112, 1114(3); Hudson v. Moonier, 102 F. 2d 96, 100.

In L. J. Smith Construction Co. v. Mullins, 198 Mo. App. 501, 201 S. W. 602, 603, defendant rented certain grading machinery "in the present condition thereof." The court held: "As it clearly was the intention of the parties in the case at bar that the machinery was to be accepted in the condition in which it was, there could have been neither an expressed nor implied warranty as to its condition. [Citing authority.]"

Generally speaking, a bailor is not liable to third persons for injuries from the defective condition of a leased chattel which the bailee himself has specifically selected, as here. 6 Am. Jur. 415, n. 20; 8 C. J. S. 259, n. 53; Builders' Brick & Sup. Co. v. Walsh Transp. Co., 174 N. Y. S. 690, 692; Gaffey v. Forgione & Romano Co., 126 Me. 220, 137 Atl. 218; Annotation, 92 Am. St. Rep. 555 (3). See State ex rel. Jones Store Co. v. Shain, 352 Mo. 630, 179 S. W. 2d 19.

In the instant case under plaintiff's evidence his employer, the Construction Company, did not rely upon any representation or warranty, expressed or implied, of defendant respecting the suitability of the sweeper for any particular purpose and none was given. Plaintiff's employer rented the sweeper time and again in 1945, 1946, and 1947; taking it "as is"; knowing its condition, which was the same on all occasions, and agreeing to maintain and return it to defendant, less normal wear and tear, with defendant under no obligation whatsoever. Plaintiff's employer, the Construction Company, selected the sweeper it desired. The bailment or hiring was of the individual article, this particular sweeper; and defendant did not furnish and did not undertake to furnish an article of a particular kind capable of performing a given task with the bailee relying upon defendant's judgment. Consequently, the negligence, if any, in the selection of the article is the negligence of the bailee and not that of the bailor, the defendant. Authorities supra.

Plaintiff relies for this issue on Roddy v. Missouri Pac. Ry. Co., 104 Mo. 234, l. c. 249, 15 S. W. 1112, l. c. 1114[4]; Hudson v. Moonier, 102 F. 2d 96, l. c. 100, conforming to Hudson v. Moonier, 304 U. S. 397, 58 S. Ct. 954, 82 L. Ed. 1422; Settle v. Baldwin, 355 Mo. 336, l. c. 349, 196 S. W. 2d 299, l. c. 307. These cases are readily distinguishable from the instant case.

The Roddy case and the Settle case, which follows the Roddy case, were actions against a railroad, a common carrier, which furnished a defective car to the respective plaintiff's employer for use. In each

case the contract being performed was for the mutual benefit and profit of the railroad and plaintiff's employer. In the Roddy case, his employer "had nothing to do with selecting or providing the cars. That duty was entrusted entirely to defendant." Roddy v. Missouri Pac. Ry. Co., supra. The Settle case, on rehearing stated: "The car was furnished in a legal sense, in our opinion, under the contract and the facts as recited in the principal opinion, by Railroad Company with a consequent duty to plaintiff to exercise due care to ascertain that the car was reasonably safe for loading, quite like the legal duty of a carrier to the employee of a shipper." Settle v. Baldwin, supra.

Hudson v. Moonier involved a special duty on the part of the bailor. The case is also reported in 94 F. 2d 132, which should be read. Moonier, plaintiff, was a laborer in the employee of Guthrie & Co., Inc., a highway construction company. Fitch leased a number of trucks to Guthrie & Co., Inc., for a stated rental and agreed to "maintain the trucks in good working order and pay all costs of repairs and tires." A horn on one of the trucks became lost but was not replaced by the mechanic hired by Fitch to properly maintain the trucks. As a result plaintiff was injured when Hudson, who was operating the truck, was unable to give plaintiff a timely warning. The court held Fitch liable because "* * * he owed to the Guthrie Company employees the duty to exercise reasonable care in keeping the trucks in repair. A negligent breach of that duty created liability for resulting injuries." The instant case involves no special duty on the bailor; as plaintiff's undisputed evidence establishes that his employer, the Construction Company, had the control, maintenance, and supervision of the sweeper, and defendant had no obligation with respect thereto.

We are in full accord with the rulings in plaintiff's cases, but plaintiff's witness established facts causing them not to apply.

 Plaintiff failed to make a submissible common law case on at least one other ground.

"Generally speaking, a bailor is not liable to third persons for injuries from patent defects in the bailed article * * *." 6 Am. Jur. 415, § 316, n. 17. Where the defect is known to or readily ascertainable by the bailee, there is no duty on the bailor to notify him as such notice would not be necessary for his protection. Johnson v. Bullard Co., 95 Conn. 251, 111 A. 70, 12 A. L. R. 766, 771; Olszewski v. United Fruit Co., 34 F. Supp. 113, 114[3]; Jones v. Hartman Bev. Co., 29 Tenn. App. 265, 203 S. W. 2d 166, 169[5].

In American Mut. Lia. Ins. Co. v. Chain Belt Co., 224 Wis. 155, 271 N. W. 828, 832, defendant leased a "pumpcrete" machine to Jensen. "Pumpcrete" machines receive concrete from a mixer and pump it through a pipe to where it is used. A "go-devil" is forced through the pipe under compressed air to clean the pipe; and this is danger-

ous to those ahead of the end of the pipe. Kuske, an employee of Jensen, was thus injured when the "go-devil" was forced through and out of the pipe, and the employer's insurer and he sued the bailor, who was also the owner and manufacturer of the "pumpcrete" machine. That case was stronger for a plaintiff than the instant case. The court, in holding for the defendant, said in part: "Having warned Jensen, the employer, who was on the job, as to the dangers, and knowing that he had gone below, the company [defendant] owed no duty to warn his employees."

The Construction Company owed to plaintiff as its employee the nondelegable duty of exercising due care to furnish a reasonably safe place and reasonably safe tools and appliances with which to work. Snyder v. American C. & F. Co., 322 Mo. 147, 14 S. W. 2d 603, 607[4]; Daniels v. Luechtefeld (Mo. App.), 155 S. W. 2d 307, 312 [8]; American Mut. Lia. Ins. Co. v. Chain Belt Co., supra. See Wright v. Kansas City Structural Steel Co., 236 Mo. App. 872, 157 S. W. 2d 582, 590.

In pointing out that a bailor in a proper case may be liable in tort to a third person who is injured through the use of the article bailed, 6 Am. Jur. 414, § 316, n. 13, states: "* * * nevertheless, it is clear that such third person can in no event stand in a better position with respect to liability of the bailor for defects than does the bailee." The Pegeen, 14 F. Supp. 748, 751, quoting and citing authority.

The sweeper of the instant case was not a complicated machine. The chain and sprockets were in view and as readily comprehensible as the chain and sprocket of a bicycle, with which plaintiff compared them. We think the unguarded condition of the chain and sprockets patent; but if not, according to plaintiff's evidence, then plaintiff's employer, who had used the sweeper time and again, knew as much about its condition as did defendant, including the condition of the chain and sprockets, and that it had remained in the same condition for approximately two years. Plaintiff's employer, the bailee, could have no claim against defendant arising out of the unguarded condition of the chain and sprockets and owed plaintiff the nondelegable duty of furnishing him safe tools and appliances with which to work. It follows, under the above authorities, that its employee, plaintiff, a stranger to the bailment, likewise has no claim.

Plaintiff also claims that defendant's failure to guard the chain and sprockets was in violation of §§ 10182 and 10201, R. S. 1939, Mo. R. S. A.

Section 10182, so far as material, provides: "The belting, shafting, machines, machinery, gearing and drums in all manufacturing, mechanical and other establishments in this state, when so placed as to be dangerous to persons employed therein or thereabout while engaged in their ordinary duties, shall be safely and securely guarded

when possible; if not possible, then notice of its danger shall be conspicuously posted in such establishments * * *.''

Section 10201, so far as material, provides: ''Any person or persons, firm or corporation, being the owner, agent, lessee, or occupant of any manufacturing, mechanical, mercantile, or other establishment, business or calling in this state to which this article applies, or any employee therein or thereat, who shall violate, or aid or abet in violating, any of the provisions of this article, shall be deemed guilty of a misdemeanor, and upon conviction * * *'' shall be punished.

Plaintiff did not try the case upon the theory § 10182 applied. Plaintiff charged common law negligence. He did not instruct under the statute and we find nothing of record presenting an issue under the statute. Plaintiff's main instruction predicated a verdict upon findings that defendant owned and furnished the bailee the sweeper for the purpose of sweeping and spreading gravel on the streets at Fairfax; that the broom of the sweeper was turned by means of a chain and sprockets; that the chain and sprockets were unguarded when defendant furnished said sweeper and at the time plaintiff, as the bailee's employee, was operating it; that this unguarded condition caused the sweeper to be dangerous to a person operating it; that defendant knew or should have known such condition of the sweeper was dangerous to a person operating said sweeper, and that by reason of the foregoing ''said defendant failed to exercise such care as an ordinarily careful and prudent person would ordinarily exercise under the same or similar circumstances as those in evidence, and * * * was negligent, * * *'' et cetera, then the verdict should be for plaintiff. This was a submission of common law negligence for the jury's determination.

We have ruled: A plaintiff is held in the appellate court to the same theory upon which he tried his case in the trial court. Benz v. Powell, 338 Mo. 1032, 93 S. W. 2d 877, 879[2]; Kincaid v. Birt (Mo.), 29 S. W. 2d 97, 98[5]; Dutton v. Prudential Ins. Co., 238 Mo. App. 1058, 1072, 193 S. W. 2d 938, 946[10, 11]; 1 Raymond, Instruction, p. 179, § 205. Also, if no case is made on the issues submitted in the instructions, the trial court errs in not directing a verdict. Guthrie v. City of St. Charles, 347 Mo. 1175, 152 S. W. 2d 91, 93[1-4]; Borrini v. Pevely Dairy Co. (Mo. App.), 183 S. W. 2d 839, 844[1].

The contention is overruled.

■ If we assume, without holding, that the sweeper was an ''establishment'' within § 10182, still there was no substantial evidence in the instant record for a submission under the statute that defendant was aiding or abetting a violation of the statute by the Construction Company, the bailee. Tomlinson v. Marshall, 208 Mo. App. 381, 236 S. W. 680, 682[2], ruled by a divided court that the owners of a laundry, who had leased it as a going concern for the purpose

of having the lessor operate the laundry for a rental of one-half of the net profits and knowing for a certainty it would be operated by employees, were within and liable under the statute for the unguarded condition of the laundry machinery. The provisions of now § 10201 were stressed in holding said owners could be considered as aiding and abetting the violation of the statute. Section 10201 is a penal statute. Section 10182 imposes a duty, the violation of which constitutes negligence. While an owner may aid or abet a violation of the statute by a bailee or lessee, it does not necessarily follow that the mere leasing of a piece of machinery, without some overt act within the statute, is substantial evidence of such aiding and abetting. A bailee or lessee may comply with the law if the machine constitutes a part of an "establishment" by guarding it where necessary or in appropriate instances by posting a proper notice. Under plaintiff's evidence the bailee in the instant case made the selection of the thing bailed and had the control, maintenance, and supervision of it to the exclusion of defendant.

The verdict of the jury was for the right party. The order granting plaintiff a new trial should be set aside and the cause remanded with directions to reinstate the verdict of the jury and enter judgment thereon. It is so ordered. *Westhues* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.