John MARUSIC, Appellant,

v.

UNION ELECTRIC COMPANY,
a Corporation, Respondent.

No. 50190.

Supreme Court of Missouri,

Division No. 1.

March 9, 1964.

Motion for Rehearing or to Transfer
to Court En Banc Denied
April 13, 1964.

Sherman Landau, St. Louis, for appellant.

Keefe, Schlafly, Griesedieck & Ferrell, Robert J. Keefe, Robert G. McClintock, St. Louis, for respondent.

WELBORN, Commissioner.

In this action appellant John Marusic sought damages resulting from injuries sustained by his wife, Vera, in an explosion in the underground electrical distribution system of the respondent, Union Electric Company, in St. Louis. The petition sought to recover $65,000 in damages for loss of services, society and companionship of the wife and for reasonable medical expenditures for her care and treatment. The jury returned a verdict in favor of respondent. After an unavailing motion for new trial, this appeal was taken by the appellant husband.

The events giving rise to this litigation occurred in the City of St. Louis, at approximately 9:00 A.M., on May 7, 1959. The appellant was the owner and operator of a tavern located at 1338 Franklin Avenue. He and his wife, Vera, occupied living quarters at the rear of the tavern. On

the morning in question, Vera was seated at the kitchen table in the living quarters when an explosion occurred in the manholes of the respondent on 14th Street near the appellant's tavern. The force of the explosion blew out the windows on the second and third floors of the building in which the tavern was located and also damaged chimneys on the building. The force of the explosion knocked Vera from her chair to the floor. She sustained injury to her head, neck and back for which medical attention and eventually hospitalization were required.

The petition in this case charged that, on May 7, 1959, an explosion occurred in certain manholes under the exclusive possession and control of the respondent. The petition charged that the "explosion directly resulted from defendant's carelessness and negligence in causing and permitting the explosion to occur under the circumstances hereinbefore set forth." At the trial, appellant's case was submitted on his verdict-directing Instruction No. 1 which read as follows:

"The Court instructs the jury that it was the duty of the defendant Union Electric Company, at all times shown in evidence, to exercise due care to maintain the manholes and conduits, at the location shown in evidence, in a reasonably safe condition. Therefore, if you find and believe from the evidence that the Laclede Gas Company did not, either at or prior to the time of the explosion shown in evidence, damage any conduit of the defendant in the vicinity of the explosion, and that the explosion on May 7, 1959, resulted from an accumulation of combustible gas or gases in the manholes and conduits involved in the explosion, and from an electric arc caused by a defective cable in those manholes and conduits, and if you further find that the presence of the combustible gas and the existence of the electric arc could have been detected prior to the explosion through the procedure of making periodic tests and examinations of the manholes and conduits at regular periodic intervals, and that the defendant could thereby have been enabled to repair the defective cable and to suction out the combustible gas and could thereby have averted the explosion, if you so find, and if you further find that the defendant failed to make such tests and examinations at regular periodic intervals, and that in so failing the defendant failed to use due care and was negligent;

"And if you further find that the defendant could have averted the explosions by maintaining ventilation at regular periodic intervals through its aforesaid manholes and conduits to draw off such gases as would form or accumulate therein, but that the defendant failed so to do, and that in so failing the defendant failed to exercise due care and was negligent;

"And if you further find that the negligence, if any, of the defendant in all of the respects herein set forth directly caused the explosion shown in evidence, and that Mrs. Marusic was injured by the explosion, and that plaintiff sustained damage as a direct result thereof, then your verdict will be in favor of the plaintiff, John Marusic, and against the defendant, Union Electric Company, a corporation."

■ The appellant thus submitted his case on the specific charge of negligence in the failure to discover the presence of the gas and the existence of an electric arc by periodic tests and examinations of the manholes and conduits and in failing to maintain ventilation at regular periodic intervals to draw off gas which might accumulate in the manholes and conduits. In view of the respondent's contention that the evidence of the appellant failed to make a submissible case on the theory upon which the appellant elected to submit his case, we will examine the evidence in the light of the appellant's submission. The only evi-

dence concerning the cause of the explosion was offered by the appellant. Respondent presented no evidence on this question, thereby excluding the possibility of drawing any inference favorable to appellant from its evidence. Therefore, if the appellant's evidence, considered in the light most favorable to him, made no case on the theory upon which he deliberately chose to submit his claim, the respondent's contention must be upheld. Blankenship v. St. Joseph Fuel Oil & Mfg. Co., 360 Mo. 1171, 232 S.W.2d 954, 960(11–13); Guthrie v. City of St. Charles, 347 Mo. 1175, 152 S.W.2d 91, 93–95(1–4); Bowers v. Columbia Terminals Co., Mo.App., 213 S.W.2d 663, 667(2, 3).

Three witnesses testified concerning the explosion. Captain John Walsh, the head of the St. Louis Metropolitan Police Department Homicide and Arson Division, testified that he arrived at the scene of the explosion shortly after it occurred. According to him, he observed three manhole covers which had been displaced. He did not enter any of the manholes, but said that members of the Fire Department and employees of the Laclede Gas Company were at the scene and that he "was right at the top of the manhole when they said that a cable had erupted in there." He did not recall talking to any employee of the respondent. He also testified concerning the damage to the building in which appellant's tavern was located.

William K. Smith, an employee of the respondent, who was, at the time of the explosion, superintendent of the respondent's underground construction division, testified that the employees of his division installed and maintained all underground facilities of Union Electric in the area. According to him, the manholes in question belonged to Union Electric and there were conduits between them through which electrict cables were drawn. He did not know just when the manholes in question had been constructed, but they had been part of Union Electric's system during his entire period of employment beginning in 1941. He stated that the cables and the conduits were not tested "at regular, periodic intervals." He stated that, as a part of the regular inspection of facilities of Union Electric in the downtown area, a check for gas was made whenever a manhole was opened. When asked whether respondent at the time had any system of "sending a crew of men in for the sole purpose of making an inspection and testing, say, every three or four or five months, or anything like that?", the witness replied: "No, it was set up on the basis that they would patrol the entire area, and when they completed one patrol then they would start over again. That varies, of course, on the amount of time that they would work on it." According to Smith, a crew had been in the manholes here involved in the early part of 1959, the exact date not having been recorded. He was unable to say when the next prior inspection of the particular manholes had been made.

Smith testified that respondent had had instances when gas had "leaked from other facilities in the area and accumulated in our underground system." He also stated that sewer gas could enter manholes and that there was a sewer in one of the manholes involved in this case. He stated that there was a trap in the drain of the manholes to prevent the entrance of sewer gas.

Smith testified that respondent did not have any method or device for ventilating the conduits and manholes at regular periodic intervals. He stated that the gas can be driven from manholes by a blower which blows air to the bottom of manholes. He said the same effect could be accomplished by the use of suction fans, but that they would not do as well as blowing in fresh air. He stated: "If the gas in the ground is entering our underground conduit, of course, it will still keep on coming in, and if you open up the manhole and try to ventilate it, it will come in that much faster; so you can get the manhole pretty well clear so that you have mostly fresh air, but you will still have gas coming into it." When asked whether or not he found anything at the scene of the explosion which

might have produced an arc that would ignite gas, he stated that "a secondary cable * * * failed * * * and had to be replaced." He stated that he found "indication of gas present at * * * (the) location."

The third witness was Vincent Zito, general foreman for Laclede Gas Company, who went to the scene of the explosion. He testified that, at "about ten feet north of Delmar on 14th Street," Laclede employees found "a very slight leak on a sleeve" of a gas main. He stated that the leak, in his opinion, was not of such volume that it could have produced the gas which exploded. He did not know how long the leak had been present. The distance from the leak to the manholes involved in the explosion does not appear.

■ The foregoing sets out all of the evidence pertaining to the cause of the explosion and the alleged negligence on the part of the respondent in connection therewith. Viewed in the light of the appellant's theory of liability expressed in his Instruction No. 1, we find the evidence lacking in several important aspects essential to the submission made. The appellant's instruction required the jury to find that "periodic tests and examinations" of the manholes and conduits at "regular periodic intervals" would have revealed the "presence" of gas and the "existence" of the electric arc. However, there is nothing in the evidence from which the jury could have made such a finding. There was no showing whatsoever of how long gas had been present in the manholes or conduits or how long the cable had been defective. From all that appears, there could have been a test or inspection the day before the explosion or the week before and still the situation which caused the explosion might not have been discovered. The gas company employee who testified minimized the leak in the gas mains. However, no attempt was made through him or any other witness to establish the length of time that would have been required for gas leaking

as it did from the main to have accumulated in an amount sufficient to cause this explosion. Appellant's testimony raised the possibility of sewer gas as the explosive substance. However, even if it had been, there was no testimony from which the jury might have concluded that a "regular periodic" inspection would have revealed its presence or that a "regular periodic" ventilation of the manholes would have drawn off the gas which caused the explosion. Actually, the witness Smith testified that ventilation as suggested by the appellant might well draw in gas from outside sources rather than dispel it. There was no evidence to the contrary which would have shown that ventilation "at regular periodic intervals" would have, in any event, prevented the accumulation of gas which caused this explosion.

We have the same situation with respect to the discovery of the "existence of the electric arc." Actually, there is no evidence that an electric arc occurred in the conduits or manholes. There was testimony that a cable had "erupted" and that a cable failed and was replaced. From this the jury could have concluded that there had been a short circuit in the transmission system which produced an arc. However, there is no evidence regarding the nature of the defect in the cable. The testimony with respect to its "erupting" connotes a sudden, unexpected break. There is nothing to indicate otherwise. The age of the cable in question is not shown (see Kessler v. West Missouri Power Co., 221 Mo.App. 644, 283 S.W. 705) nor is there any testimony regarding the nature of the defect which required its replacement. Consequently, we must conclude that there was no evidence from which the jury might have found that "periodic tests and examinations" of the cable "at regular periodic intervals" would have led to discovery of the condition which produced the short circuit and thereby have permitted the condition to have been repaired prior to the explosion.

■ In his reply brief, in answer to respondent's attack on the submissibility of

his case, appellant asserts that "the nature of the casualty which caused the injury and damage in the instant suit was such that the chief evidence of the true cause of the explosion was practically accessible to the Electric Company, but was inaccessible to the plaintiff." He states that the only evidence available to him "was circumstantial in nature, and that is all that the law required of him." Appellant did not choose to submit his claim under the res ipsa loquitur doctrine. Even so, he was entitled to make proof of his claim of specific negligence by circumstantial evidence. However, reliance upon circumstantial evidence cannot authorize a verdict favorable to the plaintiff only by resort to conjecture and surmise. Pedigo v. Roseberry, 340 Mo. 724, 102 S.W.2d 600, 608(11, 12). Here, there could have been no alternative under the evidence to such resort if a verdict favorable to the appellant were to have resulted. Appellant cannot, of course, as hinted in oral argument, now resort to the res ipsa loquitur doctrine in order to support his claim of a submissible case. He is bound, on appeal, by the theory upon which his instructions were predicated in the trial court. Blankenship v. St. Joseph Fuel Oil & Mfg. Co., 360 Mo. 1171, 232 S.W.2d 954, 960(11).

 We are of the opinion that the appellant's evidence failed to support an essential element of the theory of liability he elected to pursue, i. e., that "regular periodic tests and inspections" would have revealed the presence of the conditions which presumably caused the explosion here. The evidence failing to support this essential hypothesis of the appellant's theory of his cause of action, the conclusion must follow that the appellant did not make a submissible case. In such circumstances, the verdict and judgment below were for the right party and we do not consider alleged errors in evidence pertaining to damages and other alleged errors not affecting the submissibility of appellant's case. Howard v. Johnoff Restaurant Co., Mo.Sup., 312 S.W.2d 55, 56(1).

In concluding that no submissible case was made under the evidence here presented, we are aware from the evidence from the trial that the wife Vera obtained a verdict and judgment on her claim against the respondent arising out of the explosion. However, the appellant's claim is a separate and distinct cause of action. The finding of negligence in the wife's case is not res judicata of the issues in this case. Womach v. City of St. Joseph, 201 Mo. 467, 100 S.W. 443, 10 L.R.A.,N.S., 140; Elmore v. Illinois Terminal Railroad Company, Mo.App., 301 S.W.2d 44, 48(11–14).

The judgment is affirmed.

COIL and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.