Clifford Gary BUFFINGTON, Respondent,

v.

FAIRGROUND SALES COMPANY,
a Corporation, Appellant.

No. 24395.

Kansas City Court of Appeals.

Missouri.

April 4, 1966.

Joe Beavers, Larry Zahnd, Maryville, for appellant.

Hull & Strong, Frank H. Strong, Maryville, for respondent.

DEW, Special Commissioner.

Plaintiff sued to recover damages for breach of an alleged express warranty in the sale to him of 20 Hereford cows by the defendant. The petition originally included as defendants Lawrence Merrigan, stockholder, and James Merrigan, stockholder, president and auctioneer, of the defendant corporation, and also copartners engaged in the trucking business at that corporation's place of business. At the close of the testimony, the case was dismissed as to said copartners, leaving the Fairground Sales Company, a corporation, as the sole remaining defendant and which will be so treated and referred to as such in this opinion. Upon a trial to a jury, plaintiff recovered a verdict and judgment against the defendant for $4,000, from which defendant has appealed.

The petition alleged plaintiff's attendance at a special cow sale advertised to be held on January 7, 1963; his purpose to acquire Hereford cows for breeding purposes limited to that breed; the representations made by the defendant's auctioneer as to the breed of the cows, their age, and their being with calf, sired by a pure-bred Hereford bull; the failure of the cows delivered to plaintiff to conform to the identification records of those purchased, or to meet the

other representations referred to, and the consequent damage sustained by plaintiff.

Defendant by its answer denied the accusations pleaded by the plaintiff and alleged that the cows purchased by the plaintiff were not owned by defendant, but by a third party who had conveyed them to it as a marketing agent, without any warranties or representations.

The pertinent evidence adduced by the plaintiff tended to prove that he was a stock farmer, 27 years of age, married and living on a rented farm near Colo, Iowa, near the farms of his parents and uncle. He had had six years experience as a farmer and presently was operating on a partnership plan by which his landlord furnished the farm and some livestock, and plaintiff was to furnish an equal number of livestock and perform the necessary work and labor required in such an arrangement. The landlord had a herd of Black Angus cattle. Plaintiff desired to acquire and to supply pure bred Hereford cows with which to build up a herd of that breed which are usually larger animals. He planned in the future, to cross the Hereford stock with Angus to produce a still better type of stock for breeding purposes. Having seen a newspaper advertisement of a special sale of cows to be conducted by defendant on January 7, 1963, at its place of business near Maryville, Missouri, he, accompanied by his father, uncle and brother, drove to the sale, some 200 miles distant. There were between 1600 and 1900 cows to be sold at the sale.

Further evidence of the plaintiff was to the effect that he and his party sat close to the auctioneer (James Merrigan, president of the defendant) who offered for sale the herd of cows then in the ring; that the auctioneer said they were pure bred Herefords, pregnant with their second or third calves, all sired by a pure bred Hereford bull; that he had known the cows in the West when they were heifers, and that they were too good to be put in a fattening yard. Plaintiff asked if he could buy less than all of the group and was told he could buy 20

head "gate cut". Plaintiff said he believed and relied on the above representations made by the auctioneer and purchased 20 head for $200 each, which were then herded from the ring. Plaintiff's father and uncle corroborated the plaintiff in the foregoing testimony regarding the sale.

Plaintiff testified further that he followed the cows he had purchased to a nearby pen and, upon inquiry, he was told that he could hire Merrigan Brothers to transport his cows by truck to plaintiff's home near Colo, Iowa. He then arranged to do so. Thereupon plaintiff went to the office of defendant, gave his check for $4,000 for the cows, received a health certificate for them containing their tag numbers, their breed as Herefords and the designation of the defendant as the consignor and plaintiff as consignee in the sale. Returning to the truck driver, plaintiff repeatedly offered to assist him in loading the cows in the truck but his assistance was repeatedly denied. Thereupon the truck driver directed plaintiff to a restaurant on the highway where the plaintiff and party could get food and where, he said, he would meet them later with the truck and get directions to plaintiff's farm in Iowa. About 5:00 or 5:30 p. m. the trucker arrived at the restaurant in his loaded truck and was told how to reach plaintiff's farm. Plaintiff and party proceeded ahead and later, about 10:00 p. m., stopped again for coffee and sandwiches, arriving at plaintiff's home about 11:30 p. m. There he learned that the trucker had arrived, unloaded into a corral the cows he had brought, and left. Plaintiff herded them that night into a pen and fed them hay.

Within a few days plaintiff noticed one of the cows was in heat and not with calf. He reported this by telephone to Lawrence Merrigan, who said he would consult the records and call back. He did not call back. Later three more were noticed to be in heat and not with calf. Two of the cows were sold because of cancerous eyes, for $279. One of them had had a calf. One cow delivered her calf, which had

black body and white face. Plaintiff testified that a Hereford cow bred to a Hereford bull, will produce a calf with a red body and white face whereas, if bred to a Black Angus bull, the calf will have a black body and a white face. Plaintiff again called and complained to Lawrence Merrigan of the developments and again the latter promised to examine his records and call back, which he failed to do.

There was proof that out of 20 cows received from the sale, only 16 had calves. The heifer calves were not kept as only two were Herefords. They were sold for $200 each. He had the cows bred later to an Angus bull and got 16 calves in 1964. Out of 17 of the cows tested by a veterinarian, it was found that the ear numbers did not correspond to the numbers on the health papers issued to the plaintiff. On a mouth test it was shown that out of 18 of the cows, four had no teeth at all, and were probably ten years old, and four had badly worn teeth, requiring the feeding of ground corn, rather than hay; two were probably five or six years old, one twelve and one ten, and the others eight or nine years of age. Plaintiff claims proof of damages in the amount of $4,950.

There was testimony that the cows purchased by plaintiff were delivered to the place of sale by one Ronald Emberton of Hamburg, Iowa, who was indebted to defendant in the sum of $19,997.12; that he had frequently shipped cattle to defendant for sale under other names as consignor and later corrected to show himself as such consignor. However, it was shown that after the sale on January 7, 1963, defendant issued a check payable to him for $21,277.23.

In short, the evidence adduced by plaintiff tended to show that the cows delivered to and received by the plaintiff from the sale did not conform to the representations of the defendant concerning the cows he had purchased and were, in fact, not the same cows purchased by him, and that

they failed to serve the purpose for which he made the purchase.

In view of the disposition which must be made of the points here raised on appeal, it is sufficient to state that there was evidence on behalf of defendant that there were no guaranties or warranties made on the cows by the defendant's auctioneer prior to the bidding at the sale.

Defendant's first point of error is that the court erred in giving, at plaintiff's request, Instruction No. 3, the same being inapplicable, misleading and confusing. Supreme Court Rule 70.01(b), V.A.M.R., adopting the Missouri Approved Instructions, (MAI) provides that if MAI contains an instruction which is applicable in the particular case, it shall be given to the exclusion of any other instruction on the same subject. The instruction must be marked to indicate the number of the form used, or whether it is a modified form or that no applicable instruction is contained in MAI. A violation of any such requirement is declared by the rule to be error,— its prejudicial effect to be judicially determined.

The rule provides further, among other things, that if MAI does not contain an applicable form of instruction, or contains one which must be modified so as to submit fairly the issue in point, such modification or other instruction used shall be "simple, brief, impartial, free from argument and shall not submit to the jury or require findings of detailed evidentiary facts". In verdict-directing instructions, it is the purpose of MAI to hypothesize the *ultimate issue, without evidentiary detail.* Plaintiff's Instruction No. 3 was marked "MAI—25.03 Modified—By Plaintiff", and was as follows:

"Your verdict must be for the plaintiff and against the defendant Fairground Sales Company if you believe:

"First, the defendant Fairground Sales Company sold twenty (20) cows to the plaintiff, and

"Second, the defendant Fairground Sales Company through its president, James Maurice Merrigan, before the cows were sold, made certain representations as to the cows, and

"Third, the plaintiff reasonably relied upon the representations of James Maurice Merrigan as being true, and

"Fourth, the cows delivered to the plaintiff were not in all respects as represented, and

"Fifth, as a direct result plaintiff was damaged".

While defendant vigorously challenges the applicability of Instruction No. 3, whether the case be deemed one of implied or express warranty, or false representations or otherwise, it insists that the instruction is fatally insufficient and defective on any theory, because it wholly fails to submit the ultimate issue so as to inform the jury of the act or conduct of the defendant of which the plaintiff complains. It is urged that the submission merely of the words "certain representations" as the ultimate issue completely fails to instruct the jury as to what issues it is to determine.

■ If Instruction No. 3 is insufficient in such a vital respect, then regardless of other points of attack, it would be reversible error. It is not intended by Rule 70.01(b) or by the comments of the committee which formulated and submitted MAI that simplicity and brevity may be achieved at the sacrifice of inherent sufficiency. The forms in MAI contain parenthetical insertions illustrative of the appropriate deisgnation of the ultimate issue or issues without evidentiary detail. None would authorize the submission merely of "certain representations" as compliance with such requirement.

■ Other points of attack are made against Instruction No. 3. However, since a new trial of this cause will be required, full discussion of these additional matters is not necessary. Tested by the present record, it would be insufficient in several respects. If Instruction No. 3 is a modification of MAI 25.03, (based on breach of warranty), then it should have required the jury to believe (1) that the defendant knew or should have known by using ordinary care of the use for which plaintiff purchased the cows; (2) that the plaintiff reasonably relied upon defendant's judgment as to the suitability (or fitness) of the cows for such use; and (3) that the cows were not fit (or suitable) for such use. If, on the other hand, the instruction is a modification of MAI 23.05 (based on fraudulent misrepresentations) it should have required the jury to believe (1) that the representations as to the cows were false; (2) that defendant knew the representations were false (or did not know whether they were true or false); and (3) that the representations were material.

Defendant's Point 2 complains that plaintiff's Instruction No. 4 was incorrect. It followed the prescribed Instruction 4.01 and was as follows:

"INSTRUCTION No. 4

(Carbon copy Marked
MAI 4.01—By Plaintiff)

"If you find the issues in favor of the plaintiff and against the defendant Fairgrounds Sales Company, then you must award the plaintiff such sum as you believe will fairly and justly compensate the plaintiff for any damages you believe he sustained as a direct result of the occurrence mentioned in the evidence".

■ Defendant objects to the use of the word "occurrence" in the above instruction under the circumstances, although used in MAI 4.01. It is argued that the transaction comprised two or more alleged "occurrences" and that the instruction is thus insufficient and permitted recovery not properly submitted, and on any occurrence in evidence. We believe that if the jury were properly instructed under Instruction

**64**

No. 3, it would not have been misled by Instruction No. 4, as submitted.

In Point ·3, defendant maintains that the court erred in making a ruling in chambers respecting the proper measure of damages to be discussed in the final arguments. The ruling was made on the basis of the record in the case and the objection was preserved. Since in a retrial, the measure of damages must again be determined and upon the basis of the evidence adduced in that trial, and certain factual matters now in dispute pertaining to the damages sustained may therein be presented and will determine the proper measure of damages, we refrain from reviewing the court's ruling in chambers under the present record.

Defendant's fourth and last point of error is that "the verdict was so excessive as to show bias and prejudice on the part of the jury". Having shown the necessity of reversing the judgment and remanding the cause for another reason, the determination of the amount of the verdict under the present record becomes academic. It would be decisive in a verdict for plaintiff in a retrial only if the evidence on the issue of damages were identical, a circumstance too speculative for our assumption. In Marusic v. Union Electric Company, Mo., 377 S.W.2d 454, where the plaintiff appealed from a verdict for defendant and it was determined on appeal that he had not made a submissible case, the Supreme Court declined to consider his further points regarding evidence pertaining to his alleged damages, or any other alleged errors not affecting the submissibility of the appellant's case.

In Duncker v. St. Louis Public Service Company, Mo.App., 241 S.W.2d 64, the appellate court, having found reversible error in the instructions on the issue of negligence and burden of proof, refused to consider the adequacy or inadequacy of the verdict, saying (p. 71):

"In the event of a retrial and a verdict for plaintiff our present determination of the question of excessiveness would be decisive of the question of adequacy or inadequacy of the next verdict only if the evidence on the issue of damages at the two trials should be identical upon the prospect of which we will not now speculate."

For like reasons we make no ruling on the alleged excessiveness of the verdict in the case at bar.

For the reasons stated the judgment should be reversed and the cause remanded. The Special Commissioner so recommends.

PER CURIAM.

The opinion of DEW, Special Commissioner, is adopted as the opinion of the court and the judgment is accordingly reversed and the cause remanded.

All concur.