STATE of Missouri, at the Relation of Carmelo GUASTELLO, doing business as Spalitto Sundries, Appellant,

v.

Fred R. JOHNSON, Director of Liquor Control for Kansas City, Missouri, et al., Respondents.

No. 22154.

Kansas City Court of Appeals.

Missouri.

June 6, 1955.

Marcy K. Brown, Jr., Joseph N. Miniace, Kansas City, for appellant.

David M. Proctor, City Counselor, James H. Coonce, Ass't. City Counselor, Kansas City, for respondent.

BROADDUS, Judge.

This is an appeal from the judgment of the Circuit Court of Jackson County, affirming the decision of the Liquor Control Board of Review of Kansas City, which sustained the order of Fred R. Johnson, Director of Liquor Control, revoking appellant's permit to engage in the sale of alcoholic beverages.

The appellant, Carmelo Guastello, was the holder of Permit No. 1069–A, issued by the City of Kansas City, authorizing him to sell intoxicating liquor by the package on the premises located at 549 Gillis Street, known as Spalitto Sundries.

On October 22, 1951, appellant was cited to appear before the Director at a public hearing. The notice charged that on Sunday, September 23, 1951, appellant did by himself or through some agent, servant or employee of his, serve, sell, give away or otherwise dispose of or suffer the same to be done on or about his licensed premises, intoxicating liquor or beer, and at the time and during the hours when such sale or distribution was prohibited by Section 17a, Section 2 of Chapter 25 of the Revised Ordinances of Kansas City, 1946, as amended September, 1950. The notice then set out said ordinance which is as follows:

"No person having a permit and license hereunder, and no employee, agent or servant of such person, shall sell, give away or otherwise dispose of, or suffer the same to be done, upon or about the premises for which such permit and license were issued any intoxicating liquor or non-intoxicating beer in any quantity between the hours of 12:00 midnight, Saturday and 12:00 midnight Sunday * * *."

The hearing before the Director took place on December 19, 1951. Appellant appeared in person and by counsel. The witnesses were sworn. Their testimony was taken down and later transcribed.

The first witness called was Mr. Jack K. Ellis, Superintendent of Police. He testified that he went to appellant's place of business at about 5:15 in the afternoon on Sunday, September 23, 1951, for the purpose of confronting the clerk on duty with the fact that a sale or sales had taken place, which the clerk denied; that he searched the premises for intoxicating liquor and found that the liquor stock was securely locked; that it was under his direction that one sale was made. Mr. Ellis further testified that he talked to appellant and that appellant said he did not know anything about the sale.

Mr. James R. Silvey then testified that he was a Sergeant in the Police Department, and that on Sunday, September 23, 1951, he and officer Leo Audd parked their car about a block from appellant's drug store at about 4:00 p. m.; that the two of them sat in the car fifteen or twenty minutes and watched the drug store; that they noticed a cream colored car drive up to the drug store and saw a colored man get out of the car and go into appellant's place of business; that in about five minutes this same colored man came out of the place of business carrying a paper sack and got in the cream colored car and drove away; that thereupon officers Silvey and Audd followed the cream colored car and stopped it; that there were two colored men and one white man in the car; that these three men were Carson Lewis, Manuel Tucker and John Young; that John Young was the white man; that Manuel Tucker was the owner of the car and Carson Lewis was sitting in the back seat; that Lewis was the one that came out of the drug store with the paper sack; that officers Silvey and Audd looked in the paper sack and found three quarts of Country Club Beer and one pint of whiskey; that the officers questioned these three men for about ten minutes and Carson Lewis told them where he had purchased the liquor.

Carson Lewis was then called and he testified that on Sunday, September 23, 1951,

he went into appellant's place of business and bought three quarts of beer and a pint of whiskey; that the beer was Country Club; that it was cold; that the whiskey was Sunny Brook whiskey; that he bought the beer and whiskey from one of the clerks; that he got three quarts of beer and a pint of whiskey and gave the clerk $5, but he did not remember the amount of change the clerk gave him; that after leaving appellant's place of business he rode in the back seat of the car and placed the whiskey in the back of the car. Lewis further testified that the police stopped him after he came out of appellant's drug store and he told them where he got the whiskey and beer; that the police took the whiskey and beer away from him. The whiskey and beer were shown to Lewis and he identified the same. The whiskey was labeled Exhibit 1, and the beer Exhibits 2, 3 and 4, and these exhibits were offered in evidence by respondents without objection.

Ernest C. Reece testified that he was employed by the Kansas City, Missouri Police Department as a mechanic's helper; that in the afternoon of Sunday, September 23, 1951, he went into Spalitto's Drug Store; that he bought a package of Lucky Strike cigarettes and a bottle of Jim Beam Whiskey; that he paid twenty cents for the cigarettes and $2 for the whiskey; that he did not know the name of the man who waited on him; that he took the whiskey and gave it to Superintendent Ellis.

Carmelo Guastello, appellant, testified that he had only one set of keys to the liquor department in the drug store, and that he carried these keys; that he did not work on Sunday, September 23; that none of the clerks had a key; that he entered the drug store while Superintendent Ellis was searching the place; that he had told his clerks not to sell anything on Sunday.

On cross-examination appellant testified that the drug store was open on September 23, and that his brother Joseph was in charge; that Joseph, a fountain boy and a delivery boy were the only three people there on that day; that Joseph did not have a key to the liquor department; that he questioned his brother Joseph and the latter told him that he did not make a sale.

At the conclusion of the hearing the Director took the matter under advisement and, on January 22, 1952, revoked appellant's license. Thereupon, appellant sought and was granted a review by the Liquor Control Board. Upon being denied relief there, appellant, on April 2, 1952, filed in the Circuit Court his petition for certiorari to review the order of the Board. The writ issued and respondents filed their return.

After a hearing in the Circuit Court, and of March 1, 1954, the court entered an order reciting that the cause had been submitted to the court upon the transcript and record and that there was sufficient, competent and substantial evidence to support the findings and orders of the Director and Board of Review, and that the same were reasonable under the whole record, and affirmed said orders revoking appellant's permit.

Appellant's first contention is that the evidence was insufficient to sustain the charge made against him because "there was no evidence that the merchandise sold was intoxicating liquor or intoxicating or non-intoxicating beer."

We have set out the evidence showing that whiskey was purchased at appellant's establishment. In this State it has often been held that "the courts will take judicial notice of the fact, without allegation or proof, that whisky is intoxicating liquor * * *." State v. Wright, 312 Mo. 626, 632, 280 S.W. 703, 705; State v. Minor, 318 Mo. 827, 833, 1 S.W.2d 106; State v. Griffin (Mo.App.), 45 S.W.2d 83, 84. Thus it is clear that the contention is without merit.

Appellant next contends that: "The sale being made by permittee's clerk, and being unauthorized, as shown by the proof, any *prima facie* proof of violation of the ordinance was clearly rebutted."

In his printed argument under this point appellant says: "While the law is that if a sale is made by an employee it makes a

*prima facie* case that it was done with the consent of the permittee, yet, it only makes a *prima facie* case subject to be rebutted by evidence. In this record the rebuttal evidence is clear and the Director made no effort whatever to overturn it by any evidence presented by him."

■ An administrative tribunal "is the fact-finding body". Kansas City v. Rooney, 363 Mo. 902, 254 S.W.2d 626, 628. The law in this State is settled that after a *prima facie* case has once been made out it is not destroyed by *oral* testimony. Peterson v. Chicago & A. Railroad Co., 265 Mo. 462, 480, 178 S.W. 182; Wendorff v. Missouri State Life Ins. Co., 318 Mo. 363, 369, 1 S.W.2d 99, 57 A.L.R. 615. The credibility of the witnesses and the weight and value to be given to their testimony are matters resting solely with the fact triers, who may disbelieve any witness, even when his evidence is uncontradicted. Laughlin v. Boatmen's Nat'l Bank of St. Louis (Mo. Sup.), 163 S.W.2d 761. The Director was not bound to believe appellant's testimony that he had told his clerks not to sell intoxicating liquors on Sundays.

■ Appellant also asserts that the charge made against him and the ordinance upon which it was based are vague and uncertain and insufficient to support the finding. In our opinion, the contention is utterly devoid of merit.

■ A study of the transcript has convinced us that the finding is supported by competent and substantial evidence upon the whole record; that it could have been reasonably made from the evidence and is not "clearly contrary to the overwhelming weight of the evidence." Thus, under the authority of Wood v. Wagoner Electric Corp., 355 Mo. 670, 197 S.W.2d 647, it becomes our duty to affirm the judgment. It is so ordered.

DEW, P. J., and ROSE, Special Judge, concur.