**J. R. WATKINS COMPANY, Inc., Plaintiff-Respondent,**

v.

**Marvin Eugene SMITH, Defendant,**

**and**

**J. E. Case, Sr. and J. E. Case, Jr., Defendants-Appellants.**

**No. 24750.**

Kansas City Court of Appeals.

Missouri.

Oct. 2, 1967.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 4, 1967.

Forge & Cochell, C. John Forge, Jr., Raytown, for appellants.

Burrus & Burrus, Rufus Burrus, Independence, for respondent.

CROSS, Judge.

Plaintiff Watkins Products, Inc., formerly known as J. R. Watkins Company, is a manufacturer and wholesale supplier of goods and merchandise consisting principally of foods, medicines, household articles, toiletries, feed supplements and insecticides sold door to door by franchised distributors. Watkins brought this suit against defendant Marvin Eugene Smith, as the principal debtor, and defendants J. E. Case, Sr. and J. E. Case, Jr., as his sureties, to recover an unpaid balance of indebtedness due it in the amount of $3,793.05, incurred by defendant Smith while acting as one of its authorized distributors. The case was tried before a jury. Defendant Smith had filed no pleading and was not present at the trial. At the conclusion of all the evidence, plaintiff dismissed the action, without prejudice, as to defendant Smith. Thereupon, at the direction of the trial court, the jury returned a verdict in favor of plaintiff, in the entire amount prayed for, against the defendant sureties, J. E. Case, Sr. and J. E. Case, Jr., who now appeal from the judgment.

Appellants charge that the trial court erred in directing the verdict for plaintiff.

As a basis for this contention appellants assert that three items charged against Smith's account were outside the scope of their surety contract and should not have been included in the jury's verdict. In order to determine these questions, we look first to the interacting relationships and obligations of the parties involved.

On September 1, 1963, Watkins Products, Inc. and Marvin E. Smith entered into a written agreement designating Watkins as "Seller" and Smith as "Purchaser", whereby Watkins agreed to sell and Smith agreed to buy Watkins products at wholesale prices for resale, and at the termination of the agreement "to pay the whole amount therefor then remaining unpaid." The legal relationship of the parties was defined by the following quoted provision of the contract: "It is expressly understood and agreed that the relationship hereunder is solely that of vendor on the part of the Seller and vendee on the part of the Purchaser, * * *"

The surety agreement is also dated September 1, 1963, bears the signatures of defendants J. E. Case and J. E. Case, Jr., and provides in pertinent part as follows:

"In consideration of One Dollar to us in hand paid, receipt of which is hereby acknowledged, by Watkins Products Inc., a corporation (hereinafter called the 'Seller') and the extension of credit and/or the sale and delivery of merchandise to Marvin Eugene Smith * * * of Kansas City, Missouri * * * (hereinafter called the 'Purchaser'), *we hereby jointly and severally, absolutely and unconditionally insure, guarantee and promise due payment* at Winona, Minnesota, but not exceeding Five Thousand ($5,-000.00) * * * Dollars in the aggregate, *of all indebtedness to the Seller now owing or hereafter incurred, by or for said Purchaser, according to the terms and conditions of any agreement made by the Purchaser and the Seller* regardless of his ability or willingness to pay the same, and consent that without affecting

our liability, any or all of the indebtedness may be changed in form, by note or otherwise, * * *" (Emphasis supplied.)

It is of special significance that the foregoing quoted surety undertaking is not limited to indebtedness incurred by Smith for merchandise purchased from Watkins. Appellants are obligated by its provisions to pay *any* indebtedness to Watkins, within the specified amount, incurred either before or during the term of agreement *by* or *for* Smith according to the terms and conditions of *any* agreement between Smith and Watkins.

Plaintiff's evidence consists of business records produced by witness Frank J. Kinsey, Jr., manager of plaintiff's collection department, in charge of accounts receivable. The witness identified certain records as having been kept under his custody and control, and otherwise qualified them as admissible evidence under the Business Records as Evidence Law. It is shown by the records of Smith's account that the agreement between him and Watkins remained in effect from and after September 1, 1963, the date of its execution, until October 21, 1964, on which date the agreement was "terminated" by Watkins. During that time Smith purchased and received goods from Watkins, for which his account reflects charges in the total sum of $26,685.93. Total credits are shown in the amount of $22,892.88. The unpaid balance of Smith's account on the terminal date was $3,793.05.

█ The first item of the Smith account disputed by appellants as being outside the scope of their surety agreement is a charge for merchandise in the amount of $761.11, bearing the date September 5, 1963, which indicates that the merchandise for which it was entered was delivered F.O.B. on that day. However, there is also in evidence an invoice for the merchandise in question which shows a shipping date of August 29, 1963. On this basis appellants claim that the sales transaction was made prior to the date of their surety agreement and that

therefore they are not liable, as guarantors, for the debt arising therefrom. It is immaterial whether the debt arose on August 29, 1963, or on September 5, 1963, because in either event appellants are liable for its payment as guarantors. In unmistakable language the surety agreement executed on September 1, 1963, obligates them, in return for consideration provided, to make "due payment * * * of all indebtedness to the Seller *now owing* or hereafter incurred." (Emphasis added.) In enforcing that agreement it was the court's duty to give effect to it as written, without regard to its wisdom or folly, 17A C.J.S. Contracts § 296(4), pp. 98–101, Tamko Asphalt Products, Inc. v. Fenix, Mo.App., 321 S.W.2d 527. Even if it be assumed that the sales transaction was completed on August 29th, 1963, and prior to execution of the surety agreement on September 1st, 1963, appellants are bound by the clear terms of that undertaking to pay any pre-existing debt owed by Smith to Watkins pursuant to any agreement they may have made.

█ Appellants also deny liability for merchandise charged to Smith's account in the amount of $2,785.84 on September 11, 1963. As respects the origin of that charge, the business records in evidence disclose the following circumstances: On September 11, 1963, one Donald D. Braun of Wichita, Kansas and defendant Marvin E. Smith entered into a written contract, an originally executed copy of which was introduced in evidence. That instrument recites that Braun is a "retiring purchaser", that Smith is a "new purchaser", and further recites an agreement as follows: "The attached itemized list of goods correctly shows the kind and quantity of goods which Donald D. Braun, the undersigned retiring Purchaser, now has on hand in good condition, to be returned to WATKINS PRODUCTS, INC., F.O.B. cars at Winona, Minnesota, or other regular manufacturing point of the Company as provided for in his agreement with it, which goods, Marvin E. Smith, the undersigned new Purchaser hereby purchases and for which he agrees to pay said

Company in accordance with his agreement. And the undersigned hereby request said Company to credit the retiring Purchaser, and charge the new Purchaser, with the goods listed, at said Company's regular and current wholesale prices." The agreement is attested by Braun's and Smith's original and duly witnessed signatures.

Pursuant to the request of Braun and Smith expressed in their agreement, and as shown by business records in evidence, Watkins credited Braun's account with the sum of $2,785.24 by duly transferring the $2,785.24 charge for the merchandise from Braun's account to Smith's and same is included in Smith's account as it now stands in demand. It was admitted by witness Kinsey that the merchandise was not returned by Braun to Watkins for re-shipment to Smith. It is contended by appellants for that reason, and because Smith took possession of the goods directly from Braun, that the transaction was a sale effected by Braun to Smith, for which Smith became indebted to Braun. Therefore, say appellants, Smith never became indebted to Watkins so as to invoke any liability on their part as sureties. This contention is without merit. It is clearly shown by the documents referred to that Braun surrendered his ownership of the merchandise to Watkins for the credit extended him therefor, and that Watkins in turn *sold* the merchandise to Smith and charged his account for the purchase price. It is of no significance that there was no physical delivery of the goods by Watkins to Smith. "Where the goods are at the time of the sale in the possession of a third person, actual manual delivery is not necessary, but there must be a valid constructive delivery. It is sufficient if the goods are pointed out and turned over to the buyer, or the third person has notice of the sale, and agrees to hold the goods for the buyer, in which case he becomes the bailee of the buyer." 77 C.J.S. Sales § 162, pp. 886–887. Also see Glass v. Gelvin, Mo.Sup., 80 Mo. 297. The written agreement between Braun and Smith is not susceptible of inter-

pretation that there was a sales transaction between Braun and Smith, or that Smith became indebted to Braun for the goods. Consequently we hold that the charge entered against Smith's account was "indebtedness to the Seller (Watkins Products, Inc.) * * * incurred, by or for said Purchaser (Smith), according to the terms and conditions of any agreement made by the Purchaser with the Seller." The indebtedness is therefore covered by the surety agreement.

■ The third item of account resisted by appellants also involves a transaction between Smith and Braun pursuant to a written agreement and is also evidenced by documentary proof introduced by Watkins, same being an originally executed copy of the agreement. That document is dated August 28, 1963, designates Braun as "the retiring distributor" and Smith as "the new distributor", and provides as follows: "This itemized list of office equipment and fixtures and supplies correctly shows the kind and quantity of such which Donald D. Braun the undersigned retiring Distributor, has on hand in good condition and hereby agrees to sell at prices stated hereon to Marvin E. Smith the undersigned new Distributor who hereby agrees to purchase and pay for said office equipment and fixtures, etc., at the prices agreed to hereon (totalling $250.00). The undersigned retiring Distributor and the new Distributor request Watkins Products, Inc. to credit the retiring Distributor and charge the new Distributor at the prices set forth and agreed to hereon." The office equipment, fixtures and supplies mentioned are duly itemized and the agreement bears the original witnessed signatures of Donald D. Braun and Marvin E. Smith. Business records introduced in evidence by Watkins disclose that on September 11, 1963, pursuant to Braun's and Smith's direction Braun's account was credited with the $250.00 purchase price of the office miscellanea and that Smith's account was charged therewith instead.

The foregoing described transaction between Smith and Braun, unlike the one previously discussed, was in fact an actual sale of the goods involved, by Braun to Smith, whereby Smith became indebted to Braun for the purchase price. However, it is further apparent that Braun assigned his interest as a debt-holder to Watkins in consideration of credit given him by Watkins for the amount of the sale price. Watkins thereby became the holder of the debt and as a result there was created "an indebtedness to the Seller (Watkins) * * incurred by or for said purchaser (Smith) according to the terms and conditions of any agreement made by the Purchaser with the Seller." Again, it is our holding that the indebtedness is within the scope of the surety agreement.

Appellants have introduced no evidence whatsoever to contradict any of the foregoing facts Watkins has established by documentary proof. Nor is it disputed by appellants that the surety contract was in fact executed by them and that it stands in force and effect as a binding agreement. Appellants have cited J. R. Watkins Company v. Henson, Mo.App., 319 S.W.2d 21, as authority for their contention that the debts arising from the Smith-Braun transactions are not within the scope of their guaranty. The case is not in point because the surety agreement there in controversy was materially different from the undertaking in this case. The Henson agreement obligated the sureties to pay only for "goods and other articles (and transportation charges thereon) manufactured or sold by it (Watkins) as the Purchaser may reasonably require for sale." The agreement in the instant case binds the defendant sureties to pay *all indebtedness* to Watkins incurred by or for Smith, their principal, pursuant to *any* agreement between Smith and Watkins, without qualification or limitation as to its nature.

■ We conclude that the trial court did not err in directing a verdict for plaintiff Watkins because appellants have made no

showing of any probative facts that would constitute a defense against liability under their surety obligation. It has long been the rule that when a plaintiff's proof is documentary and undisputed the trial court may direct a verdict for the plaintiff. Coleman v. Jackson County, 349 Mo. 255, 160 S.W.2d 691; United States Fidelity & Guaranty Co. v. Calvin, Mo.App., 7 S.W.2d 732; Cieslinski v. Clark, Mo.App., 223 S.W. 2d 139.

The judgment is affirmed.

All concur.