**STATE of Missouri ex rel. STATE DEPARTMENT OF PUBLIC HEALTH AND WELFARE, Division of Welfare, Plaintiff-Appellant,**

v.

**Charles L. RUBLE, Defendant-Respondent.**

**No. 9011.**

Springfield Court of Appeals, Missouri.

Nov. 25, 1970.

Motion for Rehearing or to Transfer to Supreme Court Denied Dec. 11, 1970.

Application to Transfer Denied Feb. 8, 1971.

———◆———

Elmore G. Crow, Curtis J. Quimby, Edward D. Summers, Jefferson City, for plaintiff-appellant.

Urban C. Bergbauer, Jr., Ironton, for defendant-respondent.

1. References to rules and statutes are to Missouri Supreme Court Rules of Civil Procedure, V.A.M.R., and to RSMo 1969, V.A.M.S., except that references to Subsec. 2(3), § 208.010 are made before it was amended effective July 15, 1969, Laws 1969, H.B. 804, § 1. Prior to said amendment defendant was ineligible for old age assistance benefits if he owned or possessed cash or securities in excess of $1,500 while married or $750 after he became single.

2. Under the proof and submission, plaintiff's evidence regarding benefit payments from May 1948 through February 1959 became immaterial [Willoughby v. Jamison, 8 Cir., 103 F.2d 821, 823(5), cert.

TITUS, Presiding Judge.

For the use and benefit of the division of welfare, an integral part of the department of public health and welfare (§ 207.-010) [1], this action was brought in the name of the State of Missouri (Rule 52.01, § 507.010) to recover from defendant the sum of $15,111, said to be the amount of old age assistance benefits that he had received from May 1948 through February 1969. Differing from its paper allegations, plaintiff's proof and submission to the jury was restricted to only the payments made "between March 1, 1959, and February 1, 1969, not to exceed $8,385." Consequently, in this appeal taken by plaintiff from the judgment entered by the Circuit Court of Iron County on the verdict returned in favor of the defendant, the amount in dispute is $8,385 and we have appellate jurisdiction. Missouri Constitution, art. V, §§ 3 and 13, V.A.M.S.; § 477.040; Mitchell v. Southwestern Bell Telephone Company, Mo.App., 298 S.W.2d 520, 522(2).[2]

Plaintiff's petition, inter alia, averred that "each and every payment" of old age assistance benefits "was obtained by the Defendant through misrepresentation and nondisclosure of material facts and the payments were * * * made in violation of the provisions of Chapter 208, * * * which was not discovered by the Plaintiff * * * until January 1969 * * * when * * * it was discovered that the Defendant owned and had an interest in

denied, 308 U.S. 588, 60 S.Ct. 111, 84 L.Ed. 492] and its claim for that period is to be taken as abandoned. Haire v. Stagner, Mo.App., 356 S.W.2d 305, 308 (2) ; Bowers v. Columbia Terminals Co., Mo.App., 213 S.W.2d 663, 667(3) ; Perringer v. Lynn Food Co., Mo.App., 148 S.W.2d 601, 604(1). As we do not concern ourselves on review with immaterial and abandoned matters [Cf. Borrini v. Pevely Dairy Co., Mo.App., 183 S.W.2d 839, 845(10)], we shall confine our recitation of facts herein to events which transpired subsequent to March 1, 1959, and ignore evidence anent events which happened after February 1969 that appear irrelevant to the issues in the case.

property, cash and resources, the value of which exceeded the sum of $7,500 which disqualified him to receive * * * benefits at all times mentioned herein." Plaintiff's verdict directing instruction charged the jury that "Your verdict must be for plaintiff if you believe: First, that during the time when defendant * * * was being paid old age assistance benefits by plaintiff, he owned or possessed cash, securities or other property which was readily convertible into cash of a value in excess of $1,500.00 while married or $750.00 after becoming unmarried, and Second, that said * * * benefits were obtained by defendant from plaintiff through misrepresentation, nondisclosure of material facts or through mistake of fact, and Third, as a direct result of such misrepresentation, nondisclosure or mistake of fact, defendant received old age assistance benefits to which he was not entitled."

Defendant and his wife were born in 1883 and Mrs. Ruble died in May 1968 after a protracted illness. Mrs. Slover, a caseworker in the welfare office of Iron County who had handled defendant's case from 1948 until it was closed on February 7, 1969, was aware that "in the last 10 years" the defendant's hearing "has been pretty bad," and for this reason she "always had to be very, very careful * * * to be sure he understood me." Defendant's formal education had been limited to "about the second reader," and although he claimed he could "read printing," defendant said that "regular writing like that, I can't read."

Results of the caseworker's periodic investigations to determine defendant's eligibility vel non for old age assistance benefits, were recorded either upon a document titled "Claimant's Eligibility Statement" or "Reinvestigation Form." Both instruments were completed in longhand and signed by the caseworker; defendant and his wife also signed the "Claimant's Eligibility Statement." Admitted into evidence upon plaintiff's offers were one claimant's eligibility statement dated in 1960 and five reinvestigation forms prepared from interviews conducted in 1963, 1965, 1966, 1967 and 1968. According to Mrs. Slover, these exhibits accurately reflected information provided by defendant and his wife and showed that they had cash in the sum of $377 in July 1960 and $350 when interviewed in January 1968, but had no cash whatever at the times of the other investigations and at no time were possessed of a checking, postal or savings account, a safe (or safety) deposit box or securities of any kind. The caseworker additionally testified that she had no reason to doubt what defendant had told her on these occasions or to suspect she was not being told the truth at the time she questioned the defendant and his wife concerning their possessions.

The last reported episode in Mrs. Slover's association with defendant commenced on January 23, 1969, as his "case was due for re-investigation." Being cognizant of the expenses made necessary by his wife's prolonged sickness and death, the caseworker said she was astonished to learn, as defendant assured her, that all the bills had been paid, including those incurred "for help at home for sometime before [defendant's wife] went into the nursing home and for several months in the nursing home and [the $600 balance on] the funeral bill." When Mrs. Slover inquired of defendant where he had obtained the cash to pay these bills, "he said he just got it" and, as narrated by the caseworker, defendant "admitted" he had a safe deposit box at a bank in Annapolis, Missouri, which he had obtained subsequent to his wife's death. By prearrangement, defendant and Mrs. Slover went to the bank on February 4, 1969, to inspect the contents of the safety deposit box. The caseworker told the jury that upon arriving at the bank, defendant told her he had been to the box "the day after I talked to him" on January 23rd, and that he had $133 in cash.

Defendant, in response to plaintiff's written interrogatories (Rule 56.01), and as later confirmed at trial by him, stated

that "on and prior to January 24, 1969," he had $7,700 in the bank safety deposit box which he removed that date to give to a Mrs. Woodrow Ruble "to receive care, room and board for life." Due undoubtedly to his hearing problem and the fact he was 86 years old when he took the stand, defendant's testimony (the only evidence he offered) was brief, but trying. He recounted that when the caseworkers would "come around and see me once in awhile" that he "told them what property [I] owned at that time," and "what I told them was true about my property" at the particular times he was interviewed. Defendant's explanation for having $7,700 was that "I just saved it" a little each month out of the old age assistance benefits he had received since 1948.[3] On cross-examination, defendant was unable to say what amount of money he had saved by any particular year between 1959 and 1969, and accounted for his lack of knowledge on the subject by repeated assurances that "you ask me things I don't recollect about * * * I couldn't tell you, son," and "I am not going to tell you no lies."

Plaintiff's first point on appeal is that the trial court erred in overruling its motion for a directed verdict because plaintiff's "evidence was documentary and undisputed and [defendant] did not make a showing of any probative facts constituting a defense against his liability for the repayment of public assistance benefits paid to him." To comprehend this assignment, which is couched on nothing better than a sweeping conclusion, it is necessary to augment it with plaintiff's argument which partakes of a further conclusion that Subsec. 3, § 208.210 "clearly creates a presumption that [defendant] had * * * $7,700.00 during [all] the time benefits were paid to him and [since defendant] made no effort whatever to rebut this presumption [plaintiff] was entitled to a judg-

ment." Of course, any attempt to fathom plaintiff's intendments by this assignment and argument requires that we know the applicable parts of the involved statute, which read as follows:

"208.210. * * * 2. Any benefits paid when the recipient or his spouse is in possession of such undeclared property or income shall be recoverable by the division of welfare as a debt due to the state. If during the life, or upon the death, of any person who is receiving or has received benefits, it is found that the recipient or his spouse was possessed of any property or income in excess of the amount reported that would affect his needs or right to receive benefits, or if it be shown such benefits were obtained through misrepresentation, nondisclosure of material facts, or through mistake of fact, the amount of benefits, without interest, may be recovered from him or his estate by the division of welfare as a debt due the state.

3. The possession of undeclared property by a recipient or his spouse with whom he is living shall be *prima facie* evidence of its ownership during the time benefits were granted, and the burden to prove otherwise shall be upon the recipient or his legal representative."

Plaintiff's assertion that Subsec. 3, § 208.210 "clearly creates a presumption," is error—the word is not employed in the statute. The term "presumption" is not synonymous with the term "prima facie evidence." 29 Am.Jur.2d, Evidence, § 4, at p. 38. A presumption is not evidence; neither may it be weighed as evidence. Griffith v. Continental Casualty Co., 299 Mo. (banc) 426, 444(8), 253 S.W. 1043, 1048(10); Di Paoli v. Prudential Insurance Company, Mo.App., 384 S.W.2d 861, 865(3). Presumptions are not for consideration by the triers of the facts, but are

3. The record is silent as to the amount of benefits paid to defendant before March 1959. Monthly benefits paid after that date were: March to July 1959, $62; August 1959 through December 1962, $65; January 1963 through December 1965, $70; January 1966 through June 1968, $75; July 1968 until February 1969, $80.

procedural to effect a shifting to defendant of the burden of going forward with the evidence and disappear from the case upon the production of substantial evidence which controverts the fact presumed. Michler v. Krey Packing Co., 363 Mo. (banc) 707, 715, 253 S.W.2d 136, 140; JD v. MD, Mo.App., 453 S.W.2d 661, 663(4); Ward v. Penn Mutual Life Insurance Company, Mo.App., 352 S.W.2d 413, 419(2). On the other hand, "prima facie evidence" means such evidence which, in law, is sufficient to satisfy the burden of proof to support a verdict in favor of the party by whom it is introduced when not rebutted by other evidence. Prima facie evidence, however, is not conclusive evidence, and while it suffices to support a judgment upon a fact so established, it does not require or demand a verdict for the party whose contention it supports. Cavic v. Missouri Research Laboratories, Inc., Mo.App., 416 S.W.2d 6, 9(4); City of Jackson ex rel. Hoffmeister v. LaChance, Mo.App., 372 S.W.2d 479, 482; 32A C.J.S. Evidence § 1016, at p. 625. When a plaintiff, having the affirmative of the issue, presents evidence to establish a prima facie case, the burden of going forward with the evidence shifts to the defendant but, absent a statutory provision to the contrary, the burden of proof never shifts and remains with the plaintiff throughout the case. Frank v. Wabash Railroad Company, Mo., 295 S.W.2d 16, 22(12).

Subsec. 3, § 208.210 does not establish a presumption. The effect of this law is to create certain specified facts when proved as prima facie evidence of a further fact, i. e., proof of possession of undeclared property is prima facie evidence of its ownership by recipient during the time benefits were granted. The statute additionally changes the general rule stated in Frank v. Wabash Railroad Company, supra, by shifting "the burden to prove otherwise" to the recipient once the prima facie evidence comes into esse. The net result of Subsec. 3 is that "[t]he prima facie evidence created by the statute means evidence which, standing alone and unexplained, maintains the proposition and warrants the conclusion to support which it is introduced. * * * If such evidence is not in any way met or controlled, and relates to the decisive issue in the case, a verdict or finding is required in accordance with its effect." Thomes v. Meyer Store, Inc., 268 Mass. 587, 168 N.E. 178, 179(2); Cincotta v. Dupuy, 294 Mass. 298, 1 N.E.2d 182(2). Nevertheless, it is important to remember that while proof of possession of undeclared property may constitute prima facie evidence of its ownership at other times, it is not prima facie evidence of anything more (Bruce v. Hanks, 277 Mass. 268, 178 N.E. 728, 730), and even if it is not met or controlled, such prima facie evidence will not require a verdict unless it relates to the decisive issue in the case.

In attending to Subsec. 2, § 208.210, we perceive it as a bifurcated statute whereby the General Assembly has disjunctively afforded the division of welfare different avenues of recovery. This law provides that the amount of benefits paid may be recovered from the recipient either [I] "If * * * it is found the recipient * * * was possessed of any property or income in excess of the amount reported that would affect his needs or right to receive benefits, or [II] if it be shown such benefits were obtained through misrepresentation, non-disclosure of material facts, or through mistake of fact." (Our emphasis). Assuming plaintiff had bottomed its claim on the first alternative method of recovery, the decisive issue would be whether defendant was possessed of property in excess of the amount reported that affected his right to receive benefits, and it may have been that the unchallenged prima facie evidence arising under Subsec. 3, § 208.210 would have decided that issue. However, plaintiff was not content to pursue such a simple course or to plead it alternately (Rules 55.07 and 55.12; §§ 509.-060 and 509.110), and we do not conjecture on the consequences had it done so. Instead, as especially noted in the second

paragraph of this opinion, plaintiff elected to plead only the second alternative method of recovery and went to the jury on the sole theory that the benefits were secured "through misrepresentation, nondisclosure of material facts or through mistake of fact." Cases, of course, are reviewed by appellate courts only in the light of the theory upon which the pleadings, proof and instructions were predicated in the trial court [Marusic v. Union Electric Company, Mo., 377 S.W.2d 454, 459(5); Olsten v. Susman, Mo., 362 S.W.2d 612, 614(3); Hampton v. Loper, Mo.App., 402 S.W.2d 825, 828(3)], and if a plaintiff chooses to rest his claim upon a hard bed in the court nisi, he will not be allowed to swap it for an easier place of repose in the courts of appeal. Long v. Lackawanna Coal & Iron Co., 233 Mo. 713, 732, 136 S.W. 673, 678(2).

■ The prima facie evidence which followed proof that defendant was possessed of $7,700 "on and prior to January 24, 1969," only went to establish the further fact that he had the money during the time the benefits were paid. This did not equate to prima facie evidence that the benefits were obtained by defendant through misrepresentation, nondisclosure of material facts, or through mistake of fact, and "the burden to prove otherwise," as imposed by Subsec. 3, § 208.210, did not encumber defendant with the burden of disproving that the payments were secured through the iniquitous methods alleged by the plaintiff. We do not quarrel with the rule that when plaintiff's proof is documentary and undisputed the trial court may direct a verdict for the plaintiff. Charles F. Curry and Company v. Hedrick, Mo., 378 S.W.2d 522, 531(4, 5); J. R. Watkins Company v. Smith, Mo.App., 421 S.W.2d 527, 531–532(4). What we are attempting to say is that before a verdict may be properly directed for the plaintiff, the documentary and undisputed evidence must establish beyond all doubt the truth of the facts necessary to prove the decisive issue which, as a matter of law, will entitle the plaintiff to the relief sought; if such evidence unassailably establishes only a collateral or incidental issue, then the plaintiff is not entitled to a peremptory instruction. Cf. Coleman v. Jackson County, 349 Mo. 255, 261–262(2), 160 S.W.2d 691, 693(2). In this case, plaintiff bound its right to recovery to the averment that defendant had obtained the benefits through misrepresentation, nondisclosure of material facts or through mistake of fact, and the burden was ever on the plaintiff to sustain that proposition. Defendant denied the payments had been procured by any such means. Albeit that we assume plaintiff made a prima facie case on this principal proposition and that such could not be destroyed by oral testimony [State ex rel. Guastello v. Johnson, Mo.App., 281 S.W.2d 34, 37(3)], the prima facie evidence was not conclusive or demanding of a verdict [Brotherhood of Stationary Engineers v. City of St. Louis, Mo.App., 212 S.W.2d 454, 459(7)] and the trial court did not err in refusing to direct a verdict.

■ Plaintiff's second assignment is a badly-aimed finale to its brief consisting of a scatter charge that the trial court erred in not setting aside the verdict because "the jury * * * was motivated by sympathy for [defendant] and prejudice against [plaintiff] and therefore was in violation of the instructions of the court which required an impartial consideration of the evidence." This point will be passed as it is nothing more than an abstract assertion which presents nothing for appellate review. Rule 83.05(a) (3) and (e); La Plant v. E. I. DuPont De Nemours and Company, Mo.App., 346 S.W.2d 231, 243(20). Without declaring how they are singularly apropos to this case in particular, plaintiff cites two opinions under this point in reference to the precepts that a jury is bound by the instructions [Edmisten v. Dousette, Mo.App., 334 S.W.2d 746, 751(5)] and a verdict must be responsive to the charges [Johnson v. Hunter, Mo. App., 398 S.W.2d 449, 452(3)], which are simply abstract rules of law germane to all

jury trials in general. Prentice v. Rowe, Mo.App., 324 S.W.2d 457, 464(10). In its argument, plaintiff asserts that "[p]ractically all of [defendant's] evidence on direct examination was obviously designed to obtain sympathy for him," but proof of this cannot be based on such a general statement found only in an appellant's brief [Landers v. Smith, Mo.App., 379 S.W.2d 884, 887(4)], and, save for referring us to defendant's entire testimony, we are directed to no particular statements or testimony which could have engendered prejudice against the plaintiff and sympathy for the defendant. For a similar case where the court refused to consider such an assignment see State ex rel. State Highway Commission v. Schade, Mo.App., 271 S.W.2d 196, 198(2, 3). Plaintiff at no time objected to defendant's testimony for the reasons now advanced. We must assume that as reasonable men and women, the jury understood and followed the instructions [Lee v. Holland, Mo.App., 258 S.W.2d 30, 34(8)] and we cannot infer the verdict for defendant resulted from sympathy and prejudice. Reynolds v. Arnold, Mo., 443 S.W.2d 793, 801(12). Moreover, the naked claim that the verdict was the result of sympathy and prejudice is, in effect, tantamount to saying it was against the weight of the evidence [Bloch v. Kinder, 338 Mo. 1099, 1103, 93 S.W.2d 932, 933(4)], which is a matter within the exclusive province of the trial court for we are not authorized to pass upon the weight of the evidence. Baumle v. Smith, Mo., 420 S.W.2d 341, 345(5–8).

The judgment is affirmed.

STONE and HOGAN, JJ., concur.